JS 44   (Rev. 04/21)                                        **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Rodney Givler | The County of Chester |

**(b)** County of Residence of First Listed Plaintiff   New Castle
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Law Offices of Robert T Vance Jr, 123 South Broad Street, 15th Floor, Philadelphia PA 19109 (267)

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [x] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government Defendant
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                     Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**              **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane      [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product         Product Liability |  |  | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument |      Liability      [ ] 367 Health Care/ |  | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel &         Pharmaceutical |  | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| & Enforcement of Judgment |      Slander         Personal Injury |  | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'         Product Liability |  | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| [ ] 152 Recovery of Defaulted |      Liability      [ ] 368 Asbestos Personal |  |      New Drug Application | [ ] 470 Racketeer Influenced and |
| Student Loans | [ ] 340 Marine         Injury Product |  | [ ] 840 Trademark |      Corrupt Organizations |
| (Excludes Veterans) | [ ] 345 Marine Product         Liability |  | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment |      Liability      **PERSONAL PROPERTY** | **LABOR** |      Act of 2016 |      (15 USC 1681 or 1692) |
| of Veteran's Benefits | [ ] 350 Motor Vehicle      [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards |  | [ ] 485 Telephone Consumer |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle      [ ] 371 Truth in Lending |      Act | **SOCIAL SECURITY** |      Protection Act |
| [ ] 190 Other Contract |      Product Liability      [ ] 380 Other Personal | [ ] 720 Labor/Management | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal         Property Damage |      Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| [ ] 196 Franchise |      Injury      [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) |      Exchange |
|  | [ ] 362 Personal Injury -         Product Liability | [ ] 751 Family and Medical | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
|  |      Medical Malpractice |      Leave Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**      **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation |  | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights      **Habeas Corpus:** | [ ] 791 Employee Retirement | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 220 Foreclosure | [ ] 441 Voting      [ ] 463 Alien Detainee |      Income Security Act | [ ] 870 Taxes (U.S. Plaintiff |      Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment      [ ] 510 Motions to Vacate |  |      or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/         Sentence |  | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 245 Tort Product Liability |      Accommodations      [ ] 530 General |  |      26 USC 7609 |      Act/Review or Appeal of |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities -      [ ] 535 Death Penalty | **IMMIGRATION** |  |      Agency Decision |
|  |      Employment      **Other:** | [ ] 462 Naturalization Application |  | [ ] 950 Constitutionality of |
|  | [ ] 446 Amer. w/Disabilities -      [ ] 540 Mandamus & Other | [ ] 465 Other Immigration |  |      State Statutes |
|  |      Other      [ ] 550 Civil Rights |      Actions |  |  |
|  | [ ] 448 Education      [ ] 555 Prison Condition |  |  |  |
|  |      [ ] 560 Civil Detainee - |  |  |  |
|  |           Conditions of |  |  |  |
|  |           Confinement |  |  |  |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [x] 1   Original Proceeding
- [ ] 2   Removed from State Court
- [ ] 3   Remanded from Appellate Court
- [ ] 4   Reinstated or Reopened
- [ ] 5   Transferred from Another District *(specify)*
- [ ] 6   Multidistrict Litigation - Transfer
- [ ] 8   Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Sections 1981 and 1983

Brief description of cause:
Employment discrimination and constitutional violations

**VII. REQUESTED IN COMPLAINT:**

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*

JUDGE   None     DOCKET NUMBER _____

DATE
August 6, 2026

SIGNATURE OF ATTORNEY OF RECORD
*Robt T Vance*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM

Place of Accident, Incident, or Transaction: _West Chester, Pennsylvania_____

---

**RELATED CASE IF ANY:**   Case Number:_____*None*_____   Judge:_____

1.  Does this case involve property included in an earlier numbered suit?   Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?   Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Wage and Hour Class Action/Collective Action
☐ 6.  Patent
☐ 7.  Copyright/Trademark
☒ 8.  Employment
☐ 9.  Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  **see certification below**
☐ 16. All Other Federal Question Cases. *(Please specify):*_____

*B. Diversity Jurisdiction Cases:*

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify)*:_____
☐ 7.  Products Liability
☐ 8.  All Other Diversity Cases:  *(Please specify)*_____
     _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**United States District Court for the Eastern District of Pennsylvania**

| | |
|---|---|
| Rodney Givler | : |
| | : |
| vs | : Civil Action No. |
| | : **Jury Trial Demanded** |
| The County of Chester | : |

### *Complaint*

Plaintiff, Rodney Givler, hereby brings a series of claims against Defendant, The County of Chester, of which the following is a statement:

### *Jurisdiction and Venue*

1.     This Court has original jurisdiction to hear this Complaint and adjudicate the claims stated herein under 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 2000d-2. 2000e-5(f), this action being brought under 42 U.S.C. § 1983 ("Section 1983"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991), to redress and enjoin the discriminatory practices of defendant.

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this case occurred in this judicial district.

### *The Parties*

3.     Plaintiff, Rodney Givler, is a male citizen of the United States. At all times relevant to this Complaint he was employed in the Commonwealth of Pennsylvania.

4.     Defendant, The County of Chester (the "County"), is a political subdivision of the Commonwealth of Pennsylvania with its principal place of business located in West Chester, Pennsylvania.

5. At all times relevant to this action, the County was an "employer" within the meaning of Section 1983 and Section 1981.

6. The acts set forth in this Complaint were authorized, ordered, condoned, ratified and/or done by the County's officers, agents, employees and/or representatives while actively engaged in the management of defendant's business and pursuant to defendant's official policies and customs.

***Background Facts***

7. Mr. Givler was employed by defendant as a Correctional Officer assigned to the Chester County Prison from November 30, 2009, until April 10, 2025, when his employment was terminated. Mr. Givler was last employed as a Lieutenant.

8. Defendant terminated Lt. Givler's employment by letter dated April 10, 2025, due to an alleged violation of County and Prison policies, to wit, Gross misconduct - breach of security. (*See* Exhibits A and B attached hereto and made a part hereof). However, Lt. Givler did not violate any County or Prison policies, including particularly the Policy related to Gross misconduct – breach of security.

9. In truth, Lt. Givler was terminated because of his support for complaints made by Correctional Officers, and in particular Black Correctional Officers, about unequal treatment by Prison management, including the unequal application of Prison policies and rules, which support was well-known to Prison management, and in retaliation for filing complaints against Major Jeffrey Theobald arising from Maj. Theobald's defamation against Lt. Givler, and Maj. Theobald's invasion of Lt. Givler's privacy, and Maj. Theobald's instruction to Lt. Givler to take action during a pending criminal proceeding that would have violated Lt. Givler's Fourth, Fifth,

2

Sixth, and Fourteenth Amendment rights, and then characterizing Lt. Givler's refusal to take that action as Disobeying a Direct Order.

10. On January 22, 2025, Lt. Givler submitted an Incident Report to Maj. Theobald, at the direction of Captain Griswold, regarding an automobile accident Lt. Givler was involved in on January 18, 2025. (*See* Exhibit C attached hereto and made a part hereof).

11. Thereafter, without justification, Maj. Theobald began to take actions against Lt. Givler related to the January 22, 2025 Incident Report that ultimately resulted in Lt. Givler's termination.

12. On February 11, 2025, as a direct result of Maj. Theobald's improper, illegal, and unconstitutional actions, Lt. Givler filed a Grievance Form against Maj. Theobald and Corporal Daniel Carroll. (*See* Exhibit D attached hereto and made a part hereof).

13. Rather than investigate Lt. Givler's serious allegations, defendant assigned Maj. Theobald to investigate the January 18, 2025 incident.

14. On April 2, 2025, Lt. Givler was summoned to an interview conducted by Maj. Theobald and Prison Investigator Janes Ciliberto. During the interview, Maj. Theobald informed Lt. Givler that Lt. Givler was under investigation for "Abandonment of Keys," and proceeded to question and threaten Lt. Givler regarding the January 18, 2025 incident and related matters.

15. Maj. Theobald's conduct during the April 2, 2025 interview was improper, illegal, and unconstitutional, and impelled Lt. Givler to file an Incident Report/Formal Complaint against Maj. Theobald on April 3, 2025. (*See* Exhibit E attached hereto and made a part hereof).

16. That same day, Maj. Theobald, in an effort to cover-up his improper, illegal, and unconstitutional conduct towards Lt. Givler, issued a report to Warden Howard Holland

3

effectively recommending that Lt. Givler be terminated.  (*See* Exhibit F attached hereto and made a part hereof).

17.    By letter dated April 10, 2025, apparently based upon Maj. Theobald's April 3, 2025 report, Warden Holland terminated Lt. Givler's employment.  (*See* Exhibit A attached hereto and made a part hereof).

18.    That same day, Maj. Theobald improperly, illegally, and unconstitutionally compelled Lt. Givler to issue an Incident Report regarding the April 2, 2025 interview related to the Key Set. (*See* Exhibit G attached hereto and made a part hereof).

19.    The termination of Lt. Givler's employment was a continuation of defendant's Prison Leadership's discrimination and retaliation gainst Black Correctional Officers and those who support their discrimination complaints.

20.    Lt. Givler has suffered, is now suffering, and will continue to suffer emotional distress, mental anguish, loss of enjoyment of life and other non-pecuniary losses as a direct and proximate result of defendant's discrimination, retaliation, and improper, illegal, and unconstitutional conduct.

21.    By reason of defendant's discrimination, retaliation, and improper, illegal, and unconstitutional conduct, Lt. Givler suffered and will continue to suffer extreme harm, including loss of income and other employment benefits, loss of professional opportunities, embarrassment and humiliation.

22.    Defendant acted and failed to act willfully, maliciously, intentionally and with reckless disregard for Lt. Givler's rights.

## Count I

### *The Civil Rights Act of 1866, 42 U.S.C. §1981*

23. Plaintiff restates and realleges paragraphs 1-22, inclusive, as though set forth here in full.

24. Lt. Givler had a federal statutory right under the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), as amended, to be free from discrimination and retaliation because of his support for the discrimination and retaliation complaints of Black employees who sought to be accorded the same rights as were enjoyed by White employees with respect to the terms and conditions of their employment relationship with defendant and to the enjoyment of all benefits, privileges, terms and conditions of that relationship.

25. Defendant's conduct described above deprived Lt. Givler of the rights, privileges and immunities guaranteed to him under Section 1981.

26. By reason of defendant's conduct, Lt. Givler is entitled to all legal and equitable relief available under Section 1981.

## Count II

### *42 U.S.C. § 1983 – Fourth Amendment*

27. Plaintiff restates and realleges paragraphs 1-26, inclusive, as though set forth here in full.

28. The Fourth Amendment of the U.S. Constitution protects people's right to privacy and freedom from unreasonable intrusions by the government in one's personal affairs.

29. Defendant's improper, illegal, and unconstitutional actions described above violated Lt. Givler's reasonable expectation of privacy with respect to the handling of an entirely private matter – the January 18, 2025 automobile accident and all matters related thereto.

5

30.     Lt. Givler did not consent or submit to, authorize, or acquiesce in defendant's improper, illegal, and unconstitutional actions described above.

31.     Defendant's conduct described above deprived Lt. Givler of the rights, privileges and immunities guaranteed to him under the Fourth Amendment.

32.     By reason of defendant's improper, illegal, and unconstitutional conduct, Lt. Givler is entitled to all legal and equitable relief available for a violation of the Fourth Amendment.

### Count III

### 42 U.S.C. Section 1983 – Fifth Amendment

33.     Plaintiff restates and realleges paragraphs 1-32, inclusive, as though set forth here in full.

34.     The Fifth Amendment of the U.S. Constitution protects people from self-incrimination.

35.     Defendant's improper, illegal, and unconstitutional actions described above to compel him to provide evidence against himself with respect to the January 18, 2025 automobile accident were intended to and did impinge upon Lt. Givler's right against self-incrimination.

36.     Defendant's improper, illegal, and unconstitutional conduct described above deprived Lt. Givler of the rights, privileges and immunities guaranteed to him under the Fifth Amendment.

37.     By reason of defendant's improper, illegal, and unconstitutional conduct, Lt. Givler is entitled to all legal and equitable relief available for a violation of the Fifth Amendment.

6

### *Count IV*

### *42 U.S.C. Section 1983 – Sixth Amendment*

38.     Plaintiff restates and realleges paragraphs 1-37, inclusive, as though set forth here in full.

39.     The Sixth Amendment of the U.S. Constitution protects the right of people accused of a crime in a criminal prosecution to the assistance of a lawyer.

40.     Defendant's improper, illegal, and unconstitutional actions described above were intended to deprive Lt. Givler of the assistance of his chosen defense counsel in connection with the criminal proceedings related to the January 18, 2025 automobile accident.

41.     Defendant's improper, illegal, and unconstitutional conduct described above deprived Lt. Givler of the rights, privileges and immunities guaranteed to him under the Sixth Amendment.

42.     By reason of defendant's improper, illegal, and unconstitutional conduct, Lt. Givler is entitled to all legal and equitable relief available for a violation of the Sixth Amendment.

### *Count V*

### *42 U.S.C. Section 1983 – Fourteenth Amendment*

43.     Plaintiff restates and realleges paragraphs 1-42, inclusive, as though set forth here in full.

44.     The Fourteenth Amendment of the U.S. Constitution guarantees equal protection under the law for all persons.

45.     For the reasons alleged in paragraph 9, above, and without any legitimate or rational basis therefor, defendant treated Lt. Givler differently and worse than other employees

7

of defendant who had been involved in an automobile accident wholly unrelated to their employment.

46. Defendant's improper, illegal, and unconstitutional conduct described above deprived Lt. Givler of the rights, privileges and immunities guaranteed to him under the Fourteenth Amendment.

47. By reason of defendant's improper, illegal, and unconstitutional conduct, Lt. Givler is entitled to all legal and equitable relief available for a violation of the Fourteenth Amendment.

### Jury Demand

48. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues so triable.

### Prayer for Relief

Wherefore, Plaintiff, Rodney Givler, respectfully prays that the Court:

a. adjudge, decree and declare that defendant engaged in illegal discrimination, retaliation, and unconstitutional conduct and that the actions and practices of defendant complained of herein are violative of his rights under Section 1981, and the Fourth, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution;

b. order defendant to provide appropriate job relief to Lt. Givler, including reinstatement;

c. enter judgment in favor of Lt. Givler and against defendant for all available remedies and damages under law and equity, including, but not limited to, back pay, front pay, past and future mental anguish and pain and suffering, in amounts to be determined at trial;

d.　order defendant to pay the attorney's fees, costs, expenses and expert witness fees of Lt. Givler associated with this case;

e.　grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable; and

f.　retain jurisdiction until such time as the Court is satisfied that defendant has remedied the unlawful and illegal practices complained of herein and is determined to be in full compliance with the law.

Robert T Vance Jr
Law Offices of Robert T Vance Jr
123 South Broad Street, 15th Floor
Philadelphia PA 19109
267 887 0172 tel / 215 501 5380 fax
rvance@vancelf.com

*Attorney for Rodney Givler*

9

# Exhibit A



# THE COUNTY OF CHESTER

**COMMISSIONERS**
Josh Maxwell
Marian D. Moskowitz
Eric M. Roe

CHESTER COUNTY PRISON
501 South Wawaset Road
West Chester, PA  19382-6776
610-344-5040
FAX: 610-793-1483

HOWARD HOLLAND
WARDEN

BRIAN C. SHELLER
DEPUTY WARDEN OF SECURITY

GEORGE ROBERTS
DEPUTY WARDEN OF TREATMENT

April 10, 2025

Mr. Rodney Givler
1 Whitekirk Drive
Wilmington, DE 19808

Dear Mr. Givler:

Please be advised that your employment with the County of Chester is hereby terminated effective today April 10, 2025. This action was taken due to violation of County and Prison policies: Critical Offenses – 40229.3 #21 Gross misconduct - breach of security.

County provided medical benefits will continue through the end of April 2025.  You will receive information from Human Resources regarding your benefit continuation rights under COBRA.  You are eligible to utilize the County's Employee Assistance Program provider, Health Advocate for a period of six months.  Their telephone number is 866-799-2728.  Any benefit questions should be directed toward Anne Brogan at 610-344-6730.

All unused, accrued vacation time will be reflected in your last paycheck.  Information regarding your pension monies will be sent to you after your last pay has been processed.

Sincerely,

*Howard Holland*

Howard Holland
Warden

cc:     Human Resources

# Exhibit B

# Performance Improvement - 40229

The county will do everything possible to train its employees and provide feedback and coaching to help them succeed on the job. If these measures do not result in the employee being able to meet acceptable standards of performance, corrective discipline may be used as a tool to improve performance. Corrective discipline is an instrument to change unacceptable work behavior and to motivate and encourage employees to become more productive. Progressive discipline refers to the concept of increased severity in discipline if an employee repeatedly violates rules, and should be looked to as guidance, but is not required to be followed in every instance.

In the concept of progressive discipline, offenses are categorized as follows:
1. Minor
2. Major
3. Critical

# Progressive discipline is administered as follows:

|  | 1st Offense | 2nd Offense | 3rd Offense | 4th Offense |
|---|---|---|---|---|
| **Minor Offense** | Verbal Warning | Written Warning | Suspension | Termination |
| **Major Offense** | Written Warning | Suspension | Termination | |
| **Critical Offense** | Termination | | | |

If an employee violates any combination of three or more rules, they may be subject to immediate termination. In addition, while progressive discipline is used for minor and major offenses, in the event of critical offenses, the first occurrence may result in immediate termination. The county will take into consideration the length of time between offenses, and may disregard previous offenses if a significant period of time has passed since the offense occurred.

Verbal Warning: A verbal warning is an indication of dissatisfaction concerning job performance, a specific act, or violation of policy or procedures. The objective is to improve performance, to clear up a possible misunderstanding and/or to prevent a situation from deteriorating.

Written Warning: A written is a statement by the supervisor notifying the employee that he or she is being warned for a specific act, job performance deficiency or violation of a policy or procedure. The warning notice typically will identify the specific problem or deficiency, the corrective action that needs to be taken, the future penalties that will result from continued unsatisfactory performance or misconduct and a time limit for correction action. The employee, acknowledging receipt, should sign a copy of the statement. The supervisor should send the original to the Employee Relations Manager for filing in the employee's personnel file and furnish a copy to the employee.

The county does not guarantee that one form of action will necessarily precede another. Further the county

reserves the right, at all times, to take whatever disciplinary action it deems appropriate, up to and including termination. Prior notification, utilizing the procedures outlined above, is not a prerequisite for termination or other disciplinary action.

Certain forms of serious misconduct and performance deficiencies may result in suspension or discharge, without prior counseling. Examples of the types of violations that may subject an employee to immediate discharge include, but are not limited to, violation of county policies; insubordination; threatened or actual physical violence; possession, use or sale of controlled substances while on county business or on county property; poor performance; theft; harassment (including sexual harassment); and false, fraudulent or malicious statements about another employee or a client of the county. Please note that the list below is not all-inclusive, as the nature and seriousness of other violations may warrant disciplinary action up to and including termination.

## Minor Offenses - 40229.1

1. Unsatisfactory attendance (following discipline process in attendance strategy);
2. Unintentional failure to observe written or oral instructions;
3. Attending to personal affairs on county time;
4. Creating or contributing to unsanitary or unsafe conditions;
5. Horseplay (boisterous non-work related activity)

## Major Offenses - 40229.2

1. Violation of safety standards;
2. An act of sexual or other unlawful harassment having the purpose or effect of interfering with an individual's work performance or creating an intimidating hostile or offensive work environment;
3. Arguing with a supervisor;
4. Failure to perform in relation to the requirements of the job;
5. Interfering with the job performance of another employee;
6. Use of vile, foul or abusive language;
7. Inability to support county/departmental goals and programs;
8. Breach of confidentiality or professional ethics;
9. Unauthorized overtime;
10. Deliberate or repeated failure to use the time reporting system in the    prescribed manner;
11. Unintentional damage to company property or equipment;
12. Accessing, attempting to access or aiding in access of any county computer  system without authorization.

## Critical Offenses - 40229.3

1. Theft (regardless of the amount) or dishonesty (regardless of the severity);
2. Threatening, intimidating or coercing others;
3. Sleeping on the job;

4. Possession of guns or other lethal weapons on county property;

5. Willful damage of county property or equipment;

6. Physical assault of another person or other acts of aggression on county property;

7. Omission or falsification of information on the employment application or any other county record;

8. Using, selling, transferring, possessing, consuming or being under the influence of illegal drugs or alcohol on county property or in county vehicles;

9. Continued inability to meet standards of performance;

10. Unethical conduct as defined by the State Ethics Act;

11. 3 consecutive absences without proper notification;

12. Conduct detrimental to county operations that results in negative public relations or customer service;

13. Insubordinate acts or statements or willful failure to carry out orders;

14. Conviction or pleading guilty to a crime which impairs an employee's suitability or ability to work for the county;

15. Acts of sexual harassment, including unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature or Quid pro Quo;

16. Harassment based on legally protected areas;

17. Unauthorized copying and distribution of county records;

18. Breach of confidentiality;

19. Intentional work stoppages;

20. Unauthorized use of county name;

21. Gross misconduct;

22. Intentional or repeated disclosure of personal health information, or any violation of the Health Insurance Portability and Accountability Act.

Adopted: April 1997
Revised: January 2017
County of Chester

# Exhibit C



# CHESTER COUNTY PRISON
## *Incident Report*



| To: | Maj. Theobald | Date of Report: | 01/22/25 |
|---|---|---|---|
| From: | Lt. Givler | Officer's Badge No: | 269 |
| Subject: | Auto Accident | Date of Incident: | 01/18/2025 |
| County No: | N/A | Time of Incident: | Early Morning |
| Block / Cell: | N/A | Place of Incident: | N/A |

I HAVE THE FOLLOWING TO REPORT: In the early morning of Saturday January 18, 2025, I was driving home when I was run off the road by another vehicle that I believe was attempting to avoid a deer. As a result, my vehicle was forced off the roadway, striking a tree and coming to a complete stop. This required my vehicle to be towed and I had to make contact with New Castle County Police to retrieve my Tow Slip and Police Report for my insurance company.

Per our protocol, I reached out to my immediate supervisor (Capt. Griswold) later this day to inform him of the situation. He never acknowledged me or receipt of my text, so I reached out again on Sunday. He finally acknowledged my text and requested that I report this to you, which I did.



# Exhibit D

# THE COUNTY OF CHESTER
## GRIEVANCE FORM

FROM: Rodney Givler                                      DATE: 02/11/2025

DEPARTMENT: Prison (210000)

POSITION: Lieutenant (COIV)

SUPERVISOR: Captain H. Griswold

## GRIEVANCE: (Provide complete description and be specific about the issue you are grieving and the policy or procedure that was misapplied or misrepresented.)

Major Jeffery Theobald and Corporal Daniel Carroll are attempting to interfere in my personal affairs regarding an off-duty vehicle accident that involved an unknown vehicle that fled the scene and resulted in my single vehicle accident that did not cause any injuries to another or significant property damage, other than to my own personal property. This unnecessary investigation into a personal, off-duty and non-work related matter has been sanctioned by Maj. Jeffery Theobald. The investigation is being conducted in a defamatory and verbally ruminative manner in regard to the subjective and intentional negative leading line of questioning by Cpl. Daniel Carroll in open forums with an audience of other employes and contract staff members around and with the utilization of a possible recording device. This is being done with no consideration of my privacy and personal affairs in order to create a malicious false narrative that can not be substantiated with any factual evidence and is based solely on non-expert opinions, rumors and repetitive negative leading questioning. This erroneous investigation is completely outside the scope of my vehicle accident that was reported to my supervisor in compliance with policy. It also has absolutely no factual foundation and is based on slanderous rumors and personal bias by Cpl. Daniel Carroll. I am claiming this investigation to be in violation of the Conflict of Interest / Code of Ethics and Officer Conduct Policy (B., E., I., & I.) and it has also now created a hostile working environment for me as my character and moral foundation is being questioned with no formal establishment of evidentiary wrongdoing. I also do not believe that they have been legally authorized or requested to conduct an independent investigation for the out-of-state agency regarding a personal vehicle accident that has not resulted in any legal transgression.

## REMEDY REQUESTED:

To immediately cease and desist this unwarranted and unfounded internal investigation that has no legal or policy violation basis, as it is regarding a non-work-related single vehicle accident that occurred in my personal vehicle on my personal time on January 10, 2025, along with any alleged rumor-inspired mitigating non-work-related circumstances that are lacking any substantiated concrete factual evidence of any wrongdoing. This false and personal and professionally damning investigation is being conducted and driven with a purposeful negative false narrative and line of open forum questioning of subordinates by a higher-ranking officer that is lacking any formal investigatory credentials for an investigation into my personal affairs. This is a simple personal matter that does not involve, negatively affect or pertain to the Prison or County and is not in violation of any policies or procedures, as all current policy and procedures have been adhered to regarding my personal vehicle accident that involved outside agency contact and will continue to be if there are any future changes to this unfortunate circumstance.

## INDICATE THE STEPS YOU HAVE TAKEN TO RESOLVE THIS ISSUE:

| | |
|---|---|
| Spoke with Maj. Jeffery Theobald (No resolve) | Date: 02/10/2025 |
| Submitted Grievance to Capt. H. Griswold (Hand delivered and emailed.) | Date: 02/11/2025 |
| | Date: |
| | Date: |
| | Date: |

Attach all relevant documents to this grievance before submitting it to your Department Head. Please send a copy of this form and all relevant documents to the Human Resources department.

_____        02·11·25
(Signature of employee filing grievance)        (Date)

**GRIEVANCE:**

Major Jeffery Theobald and Corporal Daniel Carroll are attempting to interfere in my personal affairs regarding an off-duty vehicle accident that involved an unknown vehicle that fled the scene and resulted in my single vehicle accident that did not cause any injuries to another or significant property damage, other than to my own personal property. This unnecessary investigation into a personal, off-duty and non-work related matter has been sanctioned by Maj. Jeffery Theobald. The investigation is being conducted in a defamatory and verbally ruminative manner in regard to the subjective and intentional negative leading line of questioning by Cpl. Daniel Carroll in open forums with an audience of other employes and contract staff members around and with the utilization of a possible recording device. This is being done with no consideration of my privacy and personal affairs in order to create a malicious false narrative that can not be substantiated with any factual evidence and is based solely on non-expert opinions, rumors and repetitive negative leading questioning. This erroneous investigation is completely outside the scope of my vehicle accident that was reported to my supervisor in compliance with policy. It also has absolutely no factual foundation and is based on slanderous rumors and personal bias by Cpl. Daniel Carroll. I am claiming this investigation to be in violation of the Conflict of Interest / Code of Ethics and Officer Conduct Policy (B., F., I., & J.) and it has also now created a hostile working environment for me as my character and moral foundation is being questioned with no formal establishment of evidentiary wrongdoing. I also do not believe that they have been legally authorized or requested to conduct an independent investigation for the out-of-state agency regarding a personal vehicle accident that has not resulted in any legal transgression.


**REMEDY REQUESTED:**

To immediately cease and desist this unwarranted and unfounded internal investigation that has no legal or policy violation basis, as it is regarding a non-work-related single vehicle accident that occurred in my personal vehicle on my personal time on January 18, 2025, along with any alleged rumor inspired mitigating non-work related circumstances that are lacking any substantiated concrete factual evidence of any wrongdoing. This false and personal and professionally damning investigation is being conducted and driven with a purposeful negative false narrative and line of open forum questioning of subordinates by a higher-ranking officer that is lacking any formal investigatory credentials for an investigation into my personal affairs. This is a simple personal matter that does not involve, negatively affect or pertain to the Prison or County and is not in violation of any policies or procedures, as all current policy and procedures have been adhered to regarding my personal vehicle accident that involved outside agency contact and will continue to be if there are any future changes to this unfortunate circumstance.

# Exhibit E



# CHESTER COUNTY PRISON
*Incident Report*



| To: | Acting HR Director Ms. Tara LaFiura, Deputy HR Director Ms. Robin Rubin, Warden Howard Holland and Deputy Warden Brian Sheller | Date of Report: | April 03, 2025 |
|---|---|---|---|
| From: | Lt. Givler | Officer's Badge No: | 269 |
| Subject: | **Formal Complaint:** Major Jeffrey A. Theobald | Date of Incident: | April 02, 2025 @ approx. 1055hrs. |

Let this letter stand as my Formal Complaint against Major Jeffrey A. Theobald. This complaint is supported by my previously submitted initial Grievance into his attempt to interfere in my personal affairs regarding an off-duty, nonwork-related vehicle accident in my own personal vehicle and on my own time. He knowingly and purposefully initiated an unauthorized and unsanctioned investigation that was being conducted in a defamatory and verbally ruminative manner regarding the subjective and intentional negative leading line of questioning by Cpl. Daniel Carroll in open forums with an audience of other employees and contract staff members around while utilizing an alleged recording device. This was done with no consideration to my privacy of a personal and private situation and without regard to the impact of it on my personal life or legal affairs to create his own malicious false narrative for his own personal gain and without regard of ethical standards. His fabricated narrative is not substantiated with any factual evidence and is based solely on his personal opinion that he is attempting to support with outside non-expert opinions, statements from questionable sources, rumors, fear of supervisory or administrative retaliation and repetitive negative leading questioning.

This erroneous investigation is an attempt to interfere and influence my personal single vehicle nonwork-related accident that occurred outside my scope of employment and was reported to my supervisor in compliance with the current existing policies. I also verbally notified Captain Harry Griswold, Captain Scott Boettlin, Major Jeffrey A. Theobald and Deputy Warden Sheller of the safe and secure location of the non-security keys that were given to me upon promotion 13 years ago in accordance with county policy 40504.4. I filed this grievance on the basis that the investigation was in violation of the Conflict of Interest / Code of Ethics and Officer Conduct Policy (B., F., I., & J.), which now has created a hostile working environment for me as my character and moral foundation has been slandered and defamed by him and his subordinate with no formal establishment of evidentiary wrongdoing or under a legal authorized request for an independent investigation from the out-of-state agency regarding my personal vehicle accident. Deputy Warden B. Sheller deemed this un-grievable and handled this Formal Complaint against a coworker and assured me that there was no administrative review into this matter any further.

This Formal Complaint is filed against Major Jeffrey A. Theobald of the Chester County Prison located at 501 South Wawaset Road West Chester, PA 19382 and is a direct result of his premeditated, purposeful and retaliatory act in response to my previously filed Grievance against him. My formal complaints against Major Jeffrey A. Theobald are as follows: Retaliation, Continued Harassment, Creation of a Hostile Work Environment, Creating a Fictitious Storyline, Unsanctioned Interference into an Active Personal Legal Matter (nonwork related), Lying, Slander, Defamation of Character, Professional Discrimination, Abuse of Positional (Rank) Power, Hierarchical Bullying, Intimidation and Disregard to Notification of Legal Counsel.

On April 02, 2025, Major Jeffrey A. Theobald summoned me to his office. After my arrival he informed me that I was under official investigation for "Abandonment of Keys" and began questioning me after he knowingly and previously had been advised that I am under legal advisement not to discuss this open legal matter with anyone, including my employer. I reminded him several times that I was still represented by legal counsel in this active personal legal matter. He persisted and kept pressuring me for answers to his redundant line questioning in regard to the location and retrieval of my personal supervisory key set, as he already had the answers from our previous meeting back in January 2025. He then threatened me with the defiance of a Direct Order if I didn't ignore my legal counsel advisement and go retrieve the keys from the securing agency and potentially incriminate myself in writing by ordering me to write a report memorializing this meeting that could be potentially used in my active out-of-state motor vehicle accident case, against my attorney's advisement.

This set of undocumented and unaccounted for personal set of supervisory keys was given to me by administration in February 2012. These non-security sets of supervisory keys are freely given out to newly promoted supervisors by administration is and has been common practice at the Prison since my initial hire date almost 28 years ago. Upon receipt of this non-security general use key set, I was never given any verbal or written instruction on where or how they were to be stowed or cared for by the prison administration, they were simply just given to you. My specific key set contains a few prison non-security keys, personal keys and dead keys that I never removed from it that have been accumulated over the past 13 years and various duties. Current Prison policy states that security keys are listed and defined as those keys issued from Central Control that are stored in a secure location when not in use and must be issued for performance of an employee's duties and strictly controlled by the control officers through the "tag" system. This system does and has not ever applied to these given personal general non-security key sets that are given to supervisors by administration upon promotion. I have stored this set of keys in a closed compartment of my vehicle for the past 13 years after I clock out, get in my vehicle as I depart the facility grounds on a daily basis.

My given set of personal non-security keys were removed from my vehicle and placed in storage by the responding agency to my personal vehicle accident. They were not abandoned, they were left in my personal vehicle just as they have been while off duty over the past 13 years when at my home, during all my road travels, stops, vacations, etc. Over the years and to date these particular general keys have/are given supervisors, staff, other personnel and if lost or misplaced by them, they are simply replaced with no official investigation of abandonment. There is still no existence of any instructions or policy for their storage or accountability or their care upon receipt by administration. The only key that has any type of acknowledgment is the key that is associated to the storage locker that is assigned and issued to you to stow and retrieve any person items upon entry and exit of the facility.

This investigation by Major Jeffrey A. Theobald is a personal vendetta against me because of my previous filed grievance against his unethical and unprofessional involvement into my nonwork-related personal affair. My keys were removed from my personal vehicle far off the facility premises and placed in a safe and secure location. I have always known where my keys were and have kept Major Jeffrey A. Theobald informed of their location. He has created a fabricated personal narrative of the events he thinks might have happened in order to target me and serve his own retaliatory agenda of vengeance for my recent grievance filing against him for his unprofessional behavior. He is also basing his vindictive investigation on his personal opinions by dwelling on the "what ifs", instead of the "what is". I have personally been told by an administrator that Major Jeffrey A. Theobald has been given the ability to operate autonomously and unimpeded without clear procedural guidelines, supervision or professional boundaries. He has the ability to operate unimpeded with the freedom to attack anyone he likes for anything he wants with no repercussions or worry of discipline, himself. The storage of these non-security general keys is in a safe offsite location far from the facility and has never caused any inconvenience to the facility or the county and all protocols and policies have been adhered to throughout this situation. This is a clear abuse of power and misuse of position by newly hired Major Jeffrey A. Theobald.



# Exhibit F

Exhibit A 046



April 3, 2025

| | |
|---|---|
| **CASE NUMBER:** | 2025-F-001 |
| **SUBJECT:** | Lieutenant Rodney Givler |
| **TO:** | Warden Howard Holland |
| **FROM:** | Major Jeffrey Theobald |

### SYNOPSIS:

This investigation was predicated on information provided by Lieutenant (LT) Rodney Givler regarding his off-duty January 18, 2025, motor vehicle accident. LT Givler reported that his county issued keys were in evidence at New Castle County Police Department and when he retrieved personal belongings from his vehicle, his wallet with credentials was opened on the seat.

An interview was conducted with one staff member.

### SUMMARY OF FINDINGS:

On January 19, 2025, at 0838 hours, LT Givler sent an electronic mail (e-mail) correspondence asking for a call. At 1130 hours, during a telephone conversation, LT Givler reported that he was in a motor vehicle accident in the early hours of January 18, 2025. LT Givler reported an outline of the events that lead him to leaving his motor vehicle at the accident scene. LT Givler reported that he retrieved his credentials from the vehicle at the tow lot, but New Castle County Police had his County issued keys. LT Givler reported that he was going to go to the Police Department to retrieve the keys.

On February 10, 2025, at approximately 1340 hours, LT Givler stopped by the Major's Office to report a concern, regarding rumors and information he has heard regarding his January 18, 2025 accident. During this conversation, LT Givler reported that his County keys were still at the New Castle County Police Department, as his lawyer told him to not go to the Police Department. LT Givler was informed to contact his lawyer, so he can get his County keys from the Police Department.

On April 2, 2025, LT Givler was instructed to report to the Major's Office. An investigative interview was conducted.

*Staff Subject Interview:*

*Lieutenant Rodney Givler*

On April 2, 2025, at approximately 1055 hours, an interview was conducted with LT Givler. Also present during the interview was Prison Investigator James Ciliberto. LT Givler was advised that the purpose of

the interview was due to his abandonment of County issued keys and credentials after his January 18, 2025, motor vehicle accident. LT Givler confirmed that contrary to him being ordered to retrieve his work keys on February 10, 2025, when he on his on accord stopped by the Major's office, his work keys were still at the New Castle County Police Department.

LT Givler reported that the night of the accident, his work keys were stored in a locked compartment under his vehicle's radio and that his wallet with work credentials (older work identification card and badge) were secured in the glove compartment. LT Givler explained he was not sure how the police were able to open the compartments due to the damage and needing to turn on the vehicle. LT Givler stated that the police must have pried the compartments open. When asked if any other County issued property was in the vehicle, LT Givler stated a uniform was in a bag in the vehicle. LT Givler reported he retrieved his credentials and uniform.

LT Givler reported he was able to access his office because he had additional County keys in his locker that he collected throughout his time at the Prison. LT Givler explained some of the keys are now obsolete.

LT Givler was ordered to retrieve his keys from the New Castle County Police department but stated, no. LT Givler explained he was advised by his Lawyer to not obtain the keys as they were considered evidence. Prison Investigator Ciliberto explained the process and that his keys will be available for release, which LT Givler still replied, no. LT Givler was advised to contact his Lawyer and advise him that he has been ordered to retrieve his keys, and he responded that his Lawyer already knew from February 10, 2025. LT Givler was asked to provide a written statement regarding the interview, and he refused. LT Givler was ordered to provide a written statement and he was advised that this was an administrative interview. LT Givler stated he did not want to incriminate himself and again was advised this was an administrative investigation and that he was ordered to provide a written statement. LT Givler refused and stated he would not provide a written statement without his Lawyer.

**CONCLUSION:**

This investigation determined that Lieutenant Rodney Givler left County issued property; keys, credentials, and uniform in his abandoned vehicle after the motor vehicle accident. Additionally, LT Givler was insubordinate when he refused to retrieve his County issued keys from the New Castle Police Department after being ordered to on February 10, 2025, and on April 2, 2025.

**RECOMMENDATION:**

Provide Warden Howard Holland with a copy of this entire investigation.

**CHARGES:**

The following are a list of violations found to have occurred based on the actions of Lieutenant Rodney Givler:

*Policy/Procedure Violations:*

*General Personnel Orders*

| ![seal] Chester County Prison | Page 7 of 8 |
|---|---|

**Policies and Procedures**

Subject: General Personnel Orders (continued)

major offenses. Failure to report such contact will result in disciplinary action up to and including termination.

38. All Officers are required to hold confidential all prison matters. Staff information distributed verbally or written is not to be discussed with any inmate of the institution, or any individual who has not been expressly authorized to be so advised.

39. Officers will not discuss Prison business with any outside agency or authority except when given permission by the Warden. Grievances will be addressed in the manner prescribed in the County of Chester Employee Handbook.

40. Any Officer found using or taking Prison property, or property under prison control, for personal use or gain will be subject to immediate suspension and/or termination, unless given written permission from the Warden. The matter will also be reported to local authorities for possible criminal action, based on the results of an internal investigation. Any Officer who tampers with or neglects any property of the Chester County Prison faces disciplinary action up to and including termination.

41. No Officer is permitted to conduct or engage in any non-prison or personal business while on duty. (e.g.: Constable work, privately owned business, etc.)

42. Any Officer on medication of any type is required to notify their supervisor prior to reporting for duty. This notification requirement applies even if the medication is taken only during non-work hours. The purpose of this requirement is to address possible safety issues in the assignment of Officers.

    a. If an Officer must take medication during work hours, they must arrange for the administering of the medication at the appropriate times. Officers are not permitted to maintain more than a daily dosage of the prescribed medication at any time. Officers are not permitted to carry medication without the express authorization of the Officer's supervisor while the Officer is on their assigned duty station.

43. Any Officer found to have falsified information on any report will be subject to disciplinary action up to and including termination, regardless of when discovered (written and verbal). This includes pre-employment information.

44. Personal keys (i.e.: vehicle, house, etc.) are not permitted to be carried by any Officer or taken to post assignments while on duty. Personal handcuff keys are not permitted anywhere in the Prison.

45. When in possession of institutional keys you are responsible for safeguarding them and must account for their whereabouts at all times. They are to be secured on your person at all times, never left or placed elsewhere (i.e. desk, counter, drawer).

46. Officers are not permitted to bring contraband on to Prison property. Officers must limit items brought in to those needed to perform normal daily functions. If it is determined that an Officer is bringing any item to an inmate without the consent of the Warden or Deputy Warden, that Officer will be subject to disciplinary action up to and including termination.

Exhibit A 048

# Exhibit G



# CHESTER COUNTY PRISON
## *Incident Report*



| To: | Major Jeffrey A. Theobald | Date of Report: | 04/10/2025 |
|---|---|---|---|
| From: | Lieutenant Rodney Givler | Officer's Badge No: | 269 |
| Subject: | Key Set | Date of Incident: | 04/02/2025 |
| County No: | N/A | Time of Incident: | Approx. 10:55 hrs. |
| Block / Cell: | N/A | Place of Incident: | Your Administrative Office |

I HAVE THE FOLLOWING TO REPORT: On the above date and approximate time, I was complying with your summons to report to your office. Upon entering your office Mr. James Ciliberto was sitting in the corner and stood up and reintroduced himself to me and then sat back down. You then grabbed a tablet, writing utensil and sat down and informed me that you personally had me under official investigation for "Abandonment of Keys". As part of your willful, unprofessional and unethical external investigatory insertion into my nonwork-related, off duty, personal legal matter, you began interrogating me about the keys that I was given upon my promotion in 2012. You were already fully aware that I am currently represented and under the advisement of legal counsel regarding this reported personal vehicle accident that occurred on my own time in my own vehicle and where these general use non-security keys were consistently kept after work. I reiterated to you that I am still following my lawyer's advisement regarding the retrieval of these aforementioned keys that are still in a safe and secured location. You ignored my continued notification of my legal representation and continued with your incessant and badgering line of questioning. I than reminded you that I have already previously reported to you the location of these universally given keys in our initial conversation and also submitted a written statement that was addressed to you after my vehicle accident in adherence with county and prison policies. You then accused me of abandoning these casually given out non-security keys to which I responded that I did not and that I had merely stowed them in my personal vehicle in a closed compartment like I have routinely done for the last 13 years after clocking out for the completion of my paid workday.

The administration gave me these undocumented and unsigned for set of keys in February 2012, just as every other newly promoted past and present supervisor has. Upon receiving these keys, I was never given any verbal or written instruction on where or how they were to be handled or cared for outside of work hours on my own time by the prison administration. These general use non-security keys are simply just given to you upon promotion. Over the years and to date, keys of this type have and are arbitrarily given to staff on a regular basis and are commonly lost by individuals and upon that loss these general use non-security keys are simply replaced without investigation. As of today, there still is no existence of a policy or any instructions regarding the stowing or care of these particular keys during the off hours of work.

The keys that are in question and under your accusation in order for you to manufacture your official investigation were removed from a closed compartment in my vehicle by an outside agency after my personal vehicle accident, which I previously informed you of in compliance with county and prison policy. They were subsequently documented and collected from my vehicle upon towing for safekeeping, thus creating a secured chain of custody. With no regard to my legal advice, you demanded that I go retrieve these keys. Under duress, I acknowledged your directive and again reminded you that I am still under legal advisement to not retrieve them at this current time. I reiterated that I would reclaim the safely stored keys, as soon as I am given permission to do so by my lawyer. I than informed you that I would not answer any more questions without my attorney's permission or presence regarding details of the vehicle accident that occurred in my personal vehicle on my own time and is still an active open incident. After informing you multiple times of my legal representation status and their instruction to not discuss this incident with anyone without their permission or in their presence, you continued to interrogate me about the matter with ongoing harassing questions about this nonwork-related offsite incident. You then threatened me with Disobeying a Direct Order if I did not go against my legal advisement and reacquire the safe and secured keys from the collecting agency and memorialize this meeting in writing and submit it to you. I informed you that I acknowledged your ultimatums and threats of discipline and that I would consult my attorney and update you with their decision of how I should proceed.

L.T. _____ 269